**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: HON. RICHARD EATON, SENIOR JUDGE**

-------------------------------------------------------------------------X

| | |
|---|---|
| PERFORMANCE ADDITIVES LLC, | : |
| Plaintiff, | : |
| v. | :    **Court No. 25-00394** |
| UNITED STATES, | : |
| Defendant. | : |

------------------------------------------------------------------- X

# PLAINTIFF'S MOTION TO MODIFY COURT'S "CAPE PHASE III" ORDER DATED JULY 17, 2026

NEVILLE PETERSON LLP
*Counsel for Plaintiff*

John M. Peterson
Richard F. O'Neill
Patrick B. Klein
Sanzida Talukder
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: July 28, 2026

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES........................................................................................... ii

I.    INTRODUCTION ............................................................................................... 1

II.    BACKGROUND ................................................................................................ 3

    A.    The Supreme Court Strikes Down the IEEPA Tariffs ....................................... 3

    B.    The Court's July 17, 2026 Order in this Case.................................................... 7

    C.    Performance Additives' Separate Litigation and Concern Regarding Offset ..... 8

III.    ANALYSIS .......................................................................................................11

    A.    Payments Under the Tariff Laws Generally May Not be Offset Against ..........11

    B.    Customs' Regulations Limit the Offsetting of Duty Refunds........................... 15

IV.    CONCLUSION................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**

*A&K Railroad Supply Inc. v. United States*, Court No. 19-3671 (D.D.C) .................................. 10

*AGS Co. Auto. Sols. v. United States Customs and Border Protection*, Slip Op. 25-154
   (December 15, 2025) .................................................................... 4, 10

*Armstrong Cork Co. v. Lyons*, 366 F.2d 206 (8th Cir. 1966) ........................................ 16

*Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 679285 (Ct. Int'l Trade Mar. 5,
   2026) ............................................................................ 5, 17

*Beacon Moving & Storage, Inc. v. Loc. 814, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen
   & Helpers*, 362 F. Supp. 442 (S.D.N.Y. 1972) ...................................... 17

*Euro-Notions Florida Inc. v. United States*, Court No. 25-00595 ................................. 5

*Learning Resources Inc. v. Trump*, 607 U.S. ___ (February 20, 2026) ......................... 4

*Learning Resources Inc. v. Trump,* No. 25-1248 (D.D.C) ...................................... 4

*Performance Additives LLC v. United States*, Court No. 22-00086 .......................... 8, 16

*V.O.S. Selections et al. v. Trump*, Consol. Court No. 25-00066, Slip Op. 25-66 (May 28, 2025) .. 4

**Statutes**

19 U.S.C. § 1313 ............................................................................ 8
19 U.S.C. § 1401a ........................................................................... 15
19 U.S.C. § 1484 ............................................................................ 15
19 U.S.C. § 1500 ............................................................................ 15
19 U.S.C. § 1501 ........................................................................... 7, 15
19 U.S.C. § 1509 ............................................................................ 10
19 U.S.C. § 1514 ............................................................................ 15
28 U.S.C. § 1581 ............................................................................. 4
28 U.S.C. § 1583 ........................................................................... 2, 17
31 U.S.C. § 3701 ........................................................................... 11, 14
31 U.S.C. § 3711 ........................................................................... 11, 14
31 U.S.C. § 3716 ......................................................................... 11, 12, 14
31 U.S.C. § 3717 ............................................................................ 13
31 U.S.C. § 3718 ............................................................................ 13
31 U.S.C. § 3720A .......................................................................... 11
50 U.S.C. § 1701 ............................................................................. 3

**Regulations**

19 C.F.R. § 190.92 ........................................................................... 9
19 C.F.R. § 24.72 ........................................................................ passim
31 C.F.R. § 285 ......................................................................... 10, 12, 14
6 C.F.R. § 11 ............................................................................... 13

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: HON. RICHARD EATON, SENIOR JUDGE**

-----------------------------------------------------------------------X

PERFORMANCE ADDITIVES LLC,                   :

             **Plaintiff,**                   :

        v.                   :          **Court No. 25-00394**

UNITED STATES,                   :

            **Defendant.**                   :

----------------------------------------------------------------- X

**MOTION OF PLAINTIFF PERFORMANCE ADDITIVES LLC TO**

**MODIFY COURT'S "CAPE PHASE III" ORDER DATED JULY 17, 2026**

### I.      INTRODUCTION

In accordance with Rules 1 and 7 of the United States Court of International Trade, Plaintiff Performance Additives, LLC seeks an order amending this Court's July 17, 2026 order allowing Plaintiff to make application to United States Customs and Border Protection ("CBP" or "Customs") under that agency's Consolidated Administration and Processing of Refunds ("CAPE") system for refunds of tariffs unlawfully and unconstitutionally exacted under claimed authority of the International Emergency Economic Powers Act ("IEEPA"). Specifically, Plaintiff moves that the Order be amended to provide that CBP shall process all of Plaintiff's applications for refunds in CAPE without regard to any "offsets".

As discussed herein, refunds of monies under the Customs laws are rarely, if ever, susceptible to being "offset" under governing statutes. Moreover, Customs' own regulations, *see* 19 C.F.R. § 24.72, provide that offsets ("set-offs") may only be made by Customs in respect of amounts owed to Customs "for an amount which is legally fixed and undisputed." The experience of Plaintiff and

1

its counsel under the CAPE system demonstrates that, in making offsets of IEEPA tariff refunds in the system, CBP is ignoring the restrictions on offsets contained in the law and its own regulations.

Plaintiff Performance Additives LLC is currently engaged in unrelated litigation before this Court involving certain claims for duty drawback. *Performance Additives LLC v. United States*, Court No. 22-00086. Neither the drawback claims in that case, nor the underlying import entries forming the basis of those claims, were subject to IEEPA tariffs. Among the issues being litigated in that case is whether Performance Additives must repay to Customs some $11 million in accelerated drawbacks received. Performance Additives is concerned that, if it applies for IEEPA tariff refunds under the CAPE mechanism, Customs will offset the claims by the amount of the demanded accelerated payments in controversy. This would not only deprive Performance Additives of refunds of monies unconstitutionally extracted from it, but it would also disrupt other litigation before this Court involving sums which, clearly, are not "legally fixed and undisputed."

Because of its concerns that an offset would be improperly applied, Performance Additives has to date refrained from seeking any refunds in CAPE. If offsets are to be applied, Plaintiff would prefer to wait and seek a final judgment from this Court directing Customs to reliquidate its entries and refund the monies owed outside of the CAPE system[1]. Understandably, the Court wishes to make the CAPE system available to litigants in the instant IEEPA actions to expedite their refunds,

---

[1] Plaintiff is unaware of any counterclaims the government could assert in this action. The governing provision of the Customs Courts Act, 28 U.S.C. § 1583, provides:

> **§ 1583 - Counterclaims, cross-claims, and third-party actions**
>
> In any civil action in the Court of International Trade, the court shall have exclusive jurisdiction to render judgment upon any counterclaim, cross-claim, or third-party action of any party, if (1) **such claim or action involves the imported merchandise that is the subject matter of such civil action**, or (2) such claim or action is to recover upon a bond or customs duties relating to such merchandise.

[Emphasis added].

2

and to minimize the interest burden on the American taxpayer. However, allowing Customs to offset IEEPA tariff refunds is creating considerable administrative turmoil and forcing importers to protest liquidations made through CAPE which are "offset" by claims which are untested, unadjudicated, stale and improper under applicable law. Where such refunds are paid and offsets are applied under color of a federal court order, the legal issues become even murkier. By allowing Customs to set-off refunds paid pursuant to a Court order, the Court is effectively adjudicating unrelated claims and matters not within its jurisdictional remit.

In this case, Plaintiff Performance Additives LLC can point to a specific instance in which the application of an offset to its IEEPA tariff refunds could both create the basis for future litigation in this court (challenging the liquidation of entries without payment of IEEPA duty refunds) and interfere with an unrelated action currently pending before this Court.

Therefore, Plaintiff moves that the Court amend its July 17, 2026 Order in this case [ECF No. 10] to provide that Plaintiff's CAPE applications shall be processed by CBP without respect to any claimed "offsets". Plaintiff suggests that it might be appropriate for the Court to amend *all* of its orders relating to CAPE Phase III to include a similar limitation.

## II.    BACKGROUND

### A.  The Supreme Court Strikes Down the IEEPA Tariffs

Beginning in 2025, the President, acting pursuant to claimed authority of the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1701 et seq., declared various national emergencies and imposed tariffs on a wide range of goods imported into the United States. These included so-called "fentanyl" tariffs imposed against goods from Canada, Mexico and the People's Republic of China, "reciprocal" tariffs imposed on most other countries, and special levies imposed on products of Brazil and India.

3

These tariffs were challenged both in this Court[2] and Federal District Court[3]. The Supreme Court consolidated these cases and in *Learning Resources Inc. v. Trump*, 607 U.S. ___ (February 20, 2026), held that the President's power to "regulate imports" under IEEPA did not include the power to levy tariffs, a power reserved to Congress and not delegated in IEEPA.

In anticipation of the Supreme Court's decision, hundreds of importers, including Plaintiff, brought suits in this Court, seeking refunds of IEEPA tariffs unconstitutionally assessed against them. Most, if not all, of these cases, invoked this Court's "residual" basis of jurisdiction, 28 U.S.C. § 1581(i). In *AGS Co. Auto. Sols. v. United States Customs and Border Protection*, Slip Op. 25-154 (December 15, 2025), this Court noted that litigants such as Plaintiff, would be entitled to reliquidation of entries with refunds of IEEPA tariffs in the event the tariffs were struck down:

> Plaintiffs here challenge the legality and constitutionality of Executive Orders issued by the President. In such a case, a § 1581(a) protest would be futile because "all that Customs is authorized to do is collect the" duty. Thomson Consumer, 247 F.3d at 1215. Because Customs has no authority to make any decision regarding the legality or constitutionality of the Executive Orders at issue, this court has jurisdiction pursuant to 28 U.S.C. § 1581(i) rather than § 1581(a), and liquidation of the entries at issue is not final under § 1514. While the Executive Orders are extant, there is no Customs decision of a type that can be made and protested; hence no § 1514 finality of liquidation occurs. As long as this court has jurisdiction under 28 U.S.C. § 1581(i), the court can provide remedial relief, as the Government here acknowledges. In short, where such jurisdiction has attached, this court has authority to order reliquidation, and the Plaintiffs cannot claim that they would be denied a refund of tariffs paid in the event that the challenged Executive Orders are ultimately deemed unlawful by the Supreme Court.

**A. Implementation of the *Learning Resources* Decision: Creation of CAPE**

After the *V.O.S. Selections* case was remanded to this Court, it and other similarly-situated cases seeking IEEPA refunds were assigned to the present Judge.

---

[2] *V.O.S. Selections et al. v. Trump*, Consol. Court No. 25-00066, Slip Op. 25-66 (May 28, 2025).
[3] *Learning Resources Inc. v. Trump,* No. 25-1248 (D.D.C).

4

On March 5, 2026, the Court issued an Amended Order in the case of *Atmus Filtration Inc. v. United States*, Court No. 26-01259, in which it held that "All importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision".[4] The Court further[5] –

> ORDERED that, with respect to any and all unliquidated entries that were entered subject to the IEEPA duties imposed by the Executive Orders considered by the Supreme Court in Learning Resources, Inc. v. Trump, 2026 WL 477534 (U.S. Feb. 20, 2026), U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties.

After CBP advised the Court that it did not have the technical capability to carry out the Court's Orders, the Court solicited further reports from Customs concerning the agency's ability to liquidate or reliquidate entries without assessment of IEEPA tariffs.

On April 14, 2026, Brandon Lord of Customs and Border Protection filed with the Court in *Euro-Notions Florida Inc. v. United States*, Court No. 25-00595, a report concerning the development of a functionality in the agency's Automated Commercial Environment called the "Consolidated Administrative Processing of Entries" system ("CAPE"), an entry re-writing system which would allow CBP to liquidate or reliquidate entries without regard to IEEPA duties, issuing refunds to importers who had paid IEEPA tariffs, provided they had set up ACE refund accounts to receive the refunds.[6] Also on April 14, 2026, this Court noted the availability of the CAPE system to the public, noting that "Importers should be aware that, by voluntarily using CAPE, any IEEPA cash deposits will be available to offset amounts owed with respect to other duties. Customs

---

[4] *Atmus Filtration Inc. v. United States*, Court No. 26-01259, ECF 29 (March 5, 2026)
[5] *Id.*
[6] *Euro-Notions Florida v. United States*, Court No. 25-00595, ECF 15 (April 14, 2026).

will provide a method for identifying entries for which an adjustment has been made".[7] By noting that participation in CAPE was voluntary, this Court was neither authorizing nor prohibiting Customs' application of offsets. As noted below, Customs' application of offsets in the CAPE system has often been done contrary to law and regulation.

While CBP continued to file status reports with the Court on the operation of CAPE Phase I, the system was made available to litigants and non-litigants alike. The Court announced that refunds in CAPE were subject to offsets, and placed a notice on the Court's website, directing persons to CAPE instructions found on Customs and Border Protection's website.  The Customs notice states in relevant part:

> Please note that all CAPE-processed IEEPA duty refunds are subject to all applicable laws and regulations concerning the liquidation/reliquidation of entries, including the netting of all over- and under-payments for the entire entry, as determined at liquidation or reliquidation, see 19 C.F.R. § 159.1, as well as the potential diversion of refunds as necessary and appropriate to offset **the importer's legally fixed and undisputed unpaid debts to the United States**, if any, see 19 C.F.R. § 24.72.

*See*  https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds  (last accessed July 19, 2026) [Emphasis added]. Subsequently, Customs announced the functionality of CAPE Phase II, which processes refunds for import entries which have been flagged for reconciliation, but for which reconciliation entries have not been filed.

More recently, Customs announced the functionality of CAPE Phase III, under which the government would process CAPE refunds for entries which are liquidated for longer than 80 days (and which, for the most part, are beyond Customs' power to voluntarily liquidate under 19 U.S.C. § 1501). However, Customs indicated that it would not process any such CAPE refunds except

---

[7] *Euro-Notions Florida v. United States*, Court No. 25-00595, ECF 19 (April 14, 2026).

pursuant to an order of the Court in cases where particular importers have filed actions in this Court seeking IEEPA refunds.

The requirement of a court order takes the refund mechanism to a different level. In CAPE Phases I and II, Customs has been accepting and processing applications for refund of IEEPA tariffs voluntarily, regardless of whether a party is a litigant in this Court. Under CAPE Phase III, as announced, refunds would be done pursuant to Court order – orders which presumably will be "law of the case" and incorporated in final judgments of this Court.

**B. The Court's July 17, 2026 Order in this Case**

On July 17, 2026, the Court entered an order in this case summarizing the history of the IEEPA refund litigation and, in particular, granting CBP the requested legal authority to process IEEPA refunds for entries which are "liquidated and final", which the Court defined as entries which are liquidated and beyond the 90-day voluntarily liquidation period in 19 U.S.C. § 1501. The Order provides in relevant part:

> While the V.O.S. case made its way through the courts, importers brought suit in this Court seeking the refund of amounts they had deposited as IEEPA duties. These lawsuits now number in excess of 3,700 cases. At various points and in various proceedings, the Government has represented that it will refund estimated IEEPA duty deposits to Plaintiffs that challenge the duties in court. To date, it has been the Government's position that a court order directing the reliquidation of entries, whose liquidation has become final, would be necessary to provide the Government with the authority to reliquidate these finally liquidated entries and thus to provide complete relief to Plaintiffs in the cases. This order provides the Government with that legal authority.

The Court has further:

> ORDERED that U.S. Customs and Border Protection shall reliquidate, without regard to IEEPA duties, any and all of Plaintiffs' entries that have been liquidated for more than 80 days and on which Plaintiffs made estimated deposits pursuant to IEEPA. For the purposes of this order, reliquidation of entries that have been liquidated for more than 80 days is subject to Plaintiffs' counsel's submission to U.S. Customs and Border Protection of Plaintiffs' importer of record identification number(s), in accordance with instructions to

7

be provided by U.S. Customs and Border Protection and conveyed to Plaintiffs' counsel. Also, for the purposes of this order, reliquidation shall occur only following U.S. Customs and Border Protection's acceptance of Plaintiffs' CAPE declarations . . .

The Court explicitly noted that it was issuing the pronouncement as an "Order", rather than a "judgment", since "it is possible that some Plaintiffs will require further assistance from the court for all refunds to be paid. Thus, the court is issuing an order rather than a judgment, so that Plaintiffs needing the court's assistance may, in accordance with the applicable time periods in the USCIT Rules, move to lift the stay on their case and file a motion to reconsider this order or otherwise move".

Plaintiff Performance Additives LLC hereby moves to undo the stay in this case and reconsider the refund order, as issued in the instant action [ECF 10], in part.

### C. Performance Additives' Separate Litigation and Concern Regarding Offset

Customs has indicated that in processing CAPE refunds, it will undertake "the potential diversion of refunds as necessary and appropriate to offset the importer's legally fixed and undisputed unpaid debts to the United States, if any, *see* 19 C.F.R. § 24.72." The Court has previously noted CBP's intent to apply offsets, but has not commented on whether offset is appropriate, and has not ordered or authorized that offsets be applied in any particular case. To avoid interference with separate litigation pending in this Court, Plaintiff Performance Additives LLC hereby moves this Court to set aside the stay in this case and direct that Plaintiff's CAPE application be processed without regard to offset.

In *Performance Additives LLC v. United States*, Court No. 22-00086, the plaintiff has protested Customs' decision to deny certain claims for 19 U.S.C. § 1313(j)(2) and § 1313(p) drawback. In connection with those denials, CBP has requested that Performance Additives repay more than $11 million in accelerated drawback payments which Performance received pursuant to 19 C.F.R. §

190.92. Plaintiff has resisted the repayment demand and its Customs bond surety has filed protests against such demand, which are pending.

The government has requested additional time to file its Answer in Court No. 22-00086, which will be actively litigated. We anticipate that numerous parties may be brought into the case by way of counterclaim, cross-claim or impleader. The case is likely to involve claims that most of the drawback applied for is indeed due, and that any excess accelerated drawback payments have been, or should be, recovered through restitution orders in a related criminal prosecution of certain persons who victimized the plaintiff.

Under these circumstances, were Customs to offset Plaintiff's recoveries of IEEPA tariffs by the accelerated payment demand, which remains in active litigation, Court No. 22-00086, which is assigned to another judge (Restani, J.) could be severely disrupted.

As noted below, it is rarely appropriate to offset a payment made under the tariff laws for *any* reason. Furthermore, the experience of Plaintiff and its counsel with respect to other CAPE applications suggests that Customs is not faithfully following its own regulatory command that offset be applied only in cases where the claim is "legally fixed and undisputed", *see* 19 C.F.R. § 24.72.

In particular, the following cases have been observed:

➢ **Company A[8]** had a CAPE refund partially offset by a claimed debt owed to the New York State Department of Taxation and Finance.

➢ **Company A (again)** had a large CAPE refund wholly offset by other, current Customs bills relating to entries under protest, liability for which is hardly "legally fixed and undisputed".

---

[8] Plaintiff's counsel would be happy to provide the identity of these companies, and the particulars of the offsets, to the Court under seal.

➢ **Company B** had a CAPE refund offset in part to collect a debt allegedly owed to the State of Kentucky.

➢ **Companies C. D and E**, had CAPE refunds wholly or partially offset when, in the liquidation process, Customs system calculated IEEPA refunds due on the "non-steel" and "non-aluminum" values of certain "derivative products" subject to Section 232 "national security" tariffs, but the value of the aluminum or steel content on which 50% tariffs were being levied was expanded to include the entire value of the article.[9]

However, CBP may have programmed its CAPE system to detect and apply offsets, it is clear that it is not limiting offsets to "legally fixed and undisputed" assessments of Customs duties and other taxes and debts, as the Customs Regulations envision[10].

To avoid needless controversy and to guarantee the "speedy, just and inexpensive" determination of this action as required by USCIT Rule 1, Plaintiff moves that this Court amend its July 17, 2026 order in this case to provide that Customs shall process Plaintiff's CAPE refund claims without regard to offset.

---

[9] Obviously, Section 232 liabilities being assessed in liquidation are not "legally fixed and undisputed" as 19 C.F.R. § 24.72 requires. The appropriate course of action in these cases would be to refund the IEEPA tariffs and issue bills for the increased Section 232 tariffs. Offsetting creates unprecedented difficulties in the protest process. If, for example, the liquidation imposes additional Section 232 tariffs of $500,000, and this amount is offset by $300,000 in IEEPA duties retained, the importer received a bill for $200,000. But in protesting that liquidation bill, the importer is not seeking a refund of $200,000, but rather up to $800,000 (consisting of $500,000 in disputed Section 232 tariffs and $300,000 of offset IEEPA tariffs. This cuts against this Court's admonition in *AGS Co. Auto Sols. v. United States, supra*, that importers who paid the tax and commenced refund actions in this Court should not be required to file protests to seek refunds of IEEPA tariffs.

[10] In addition, the Federal Government does not always "vet" or authenticate debts which are entered into the Federal Collection System. As indicated in the Complaint filed in *A&K Railroad Supply Inc. v. United States*, Court No. 19-3671 (D.D.C), the Maryland Transportation Authority withheld the payment of some $330,000 in payments to the plaintiff for work done to offset certain 'debit vouchers" which CBP had entered into the Federal debt collection system, and which CBP had referred to Treasury for collection under 31 C.F.R. § 285.2. It was subsequently determined that the "debit vouchers" were for certain 19 U.S.C. §1509(g) recordkeeping penalties which Customs had asserted against the plaintiff, and which plaintiff contested. However, Customs never brought suit to collect the penalties, and they were long time-barred before CBP referred the debit vouchers for collection.

### III.    ANALYSIS

**A.  Payments Under the Tariff Laws Generally May Not be Offset Against**

Federal law limits the ability to enforce offsets against payments being made "under the tariff laws of the United States". The Debt Collection Improvement Act of 1982, 31 U.S.C. §§ 3701 et seq. authorizes the Treasury Department to collect certain claims or debts by withholding funds paid out by other federal agencies.

Under 31 U.S.C. § 3701(a)(1), "administrative offset" means "withholding funds payable by the United States (including funds payable by the United States on behalf of a State government) to, or held by the United States for, a person to satisfy a claim."  Under 31 U.S.C. § 3701(a)(8), "nontax" means, "with respect to any debt or claim, any debt or claim other than a debt or claim under the Internal Revenue Code of 1986."

Under the Debt Collection Improvement Act, 31 U.S.C. § 3711, the head of an executive, judicial, or legislative agency is responsible for attempting to collect claims owed to the United States arising from the agency's activities or referred to it. Agencies may also compromise claims—that is, settle them for less than the full amount—under certain limits and conditions, and may elect to abandon claims for monies owed, if the agency concludes that the cost of effecting collection would be greater than the amount to be collected.

The Deficit Reduction Act of 1984, 31 U.S.C. § 3720A, provides that the Department of Treasury will offset a tax refund otherwise owed to a debtor to pay "past- due, legally enforceable" debts. The practice of withholding federal payment in satisfaction of a debt is known as "administrative offset." The U.S. Department of Treasury's Bureau of the Fiscal Service administers the Treasury Offset Program ("TOP"). *See* e.g., 31 U.S.C. § 3716(a); 31 C.F.R. Part

285. TOP operates to intercept federal and state payments to collect delinquent debts allegedly owed to federal and state agencies.

To be eligible for collection by administrative offset, a debt submitted to Treasury must be: (i) past-due in the amount stated by the creditor agency; (ii) legally enforceable; (iii) less than ten years delinquent, unless the debt legally may be offset if more than ten years delinquent; (iv) more than $25; and (v) not secured by collateral subject to a pending foreclosure action. *See* 31 C.F.R. § 285.2(d).

TOP provides that a federal agency with a legally enforceable claim against a debtor, after notifying the debtor that the debt is subject to administrative offset and providing an opportunity to dispute the debt or make arrangements to pay it, may collect the debt by administrative offset. *See* 31 U.S.C. §§ 3716(a), (c)(6).

To collect a debt by administrative offsets, the creditor agency must certify to Treasury that the debt is eligible for collection by offset and that all due process protections have been satisfied. *See* 31 C.F.R. § 285.2(d). The creditor agency, and not the disbursing agency, is required to ensure that the debtor receives due process under the law. *See* 31 U.S.C. § 3716(a).

If properly certified by a creditor agency, Treasury must administratively offset the debt. *See* 31 U.S.C. § 3716(c)(1)(A). Once an agency certifies the debt to Treasury, Treasury must offset payments otherwise owing to the debtor in satisfaction of the debt. *See* 31 U.S.C. § 3716(c)(1)(A).

The "administrative offset" statute, 31 U.S.C. § 3716(a), provides in relevant part:

(a) After trying to collect a claim from a person under section 3711(a) of this title, the head of an executive, judicial, or legislative agency may collect the claim by administrative offset. The head of the agency may collect by administrative offset only after giving the debtor—

(1) written notice of the type and amount of the claim, the intention of the head of the agency to collect the claim by administrative offset, and an explanation of the rights of the debtor under this section;

(2) an opportunity to inspect and copy the records of the agency related to the claim;

(3) an opportunity for a review within the agency of the decision of the agency related to the claim; and

(4) an opportunity to make a written agreement with the head of the agency to repay the amount of the claim.

(b) Before collecting a claim by administrative offset, the head of an executive, judicial, or legislative agency must either—

(1) adopt, without change, regulations on collecting by administrative offset promulgated by the Department of Justice, the Government Accountability Office, or the Department of the Treasury[11]; or

(2) prescribe regulations on collecting by administrative offset consistent with the regulations referred to in paragraph (1).

To Plaintiff's knowledge, CBP has not followed any of these procedures when offsetting IEEPA tariff refunds in CAPE against other debts.

Successive sections of the Act deal with matters relating to administrative offset of claims, including collection of interest and penalties on claims [31 U.S.C. § 3717], retention of collection agencies [Id., § 3718] and reports on debt collection activities.

---

[11] While Customs and Border Protection has not adopted these specific regulations, its parent agency, the Department of Homeland Security, has. *See* 6 C.F.R. §§ 11.1, 11.4. It is far from clear that, in offsetting IEEPA duty refunds, CBP is following the requisite debt collection standards and procedures.

13

However, none of these procedures allow the offset of monies being paid out under, inter alia, the "tariff laws" of the United States. Thus, 31 U.S.C. § 3701(d) provides:

> (c) Sections 3711(e) and 3716–3719 of this title do not apply to a claim or debt under, or to an amount payable under—
>
> (1)    the Internal Revenue Code of 1986 (26 U.S.C. 1 et seq.),
>
> (2)    the Social Security Act (42 U.S.C. 301 et seq.), except to the extent provided under sections 204(f) and 1631(b)(4) of such Act and section 3716(c) of this title, or

**(3) the tariff laws of the United States;**

[Emphasis added][12].

This is echoed in 31 C.F.R. § 285.5 (e)(2)(ii) which deals with the offset of nontax debts owed to the United States and specifically excludes payments made under the tariff laws of the United States from the potential to be offset.

> (2) Payments excluded from offset under this section.  This section does not apply to the following payments:
>
> ***
>
> **(ii) Payments made under the tariff laws of the United States;**

[Emphasis added].

There can be little doubt that payments of IEEPA tariffs were made "under the tariff laws of the United States". Amendments providing for the duties were made to Section 1202 of the Tariff Act of 1930, as amended, which establishes the Harmonized Tariff Schedule of the United

---

[12] Upon failure to collect through 31 U.S.C. § 3711(a), 31 U.S.C. § 3716 permits the United States Department of Treasury Bureau of the Fiscal Service to administer the Treasury Offset Program to intercept federal and state payments to collect delinquent debts allegedly owed to federal and state agencies. 31 U.S.C. § 3716; 31 C.F.R. § 285. However, the procedure provided for in Section 3716 may not be used to intercept tariff refunds. 31 U.S.C. § 3716 (e)(2) bars such interception, stating the ability to offset "does not apply when a statute explicitly prohibits using administrative offset or setoff to collect the claim or type of claim involved."

14

States. They are ad valorem taxes, whose amount is determined under the valuation provision of Section 402 of the Tariff Act [19 U.S.C. § 1401a]. They are required to be deposited with consumption entry documents, in accordance with Section 484 of the Tariff Act [19 U.S.C. § 1484]. They are finally determined upon liquidation of an entry in accordance with Section 500 of the Tariff Act [19 U.S.C. § 1500] and upon reliquidation [Id., § 1501], the procedural mechanisms which have heretofore been used in processing refunds under the CAPE system. They are subject to protest under Section 514(a) of the Tariff Act, 19 U.S.C. § 1514(a).

Repayment of IEEPA tariffs, therefore, is not subject to offset to collect other debts. This is true of the disputed accelerated drawback monies which are the subject of Court No. 22-00086.

**B. Customs' Regulations Limit the Offsetting of Duty Refunds**

In addition, Customs' own regulations limit the circumstances in which the agency may attempt to offset a refund of a Customs duty. In particular, 19 C.F.R. § 24.72 provides:

> **§ 24.72 Claims; set-off.**
>
> When an importer of record or other party has a judgment or other claim allowed by legal authority against the United States, and he is indebted to the United States, either as principal or surety, **for an amount which is legally fixed and undisputed**, the port director shall set off so much of the judgment or other claim as will equal the amount of the debt due the Government;

[Emphasis added].

Assuming, arguendo, that the "judgment or other claim allowed by legal authority" discussed in the regulation is a claim for refund of duties under the tariff laws, and is even capable of being offset, Customs' regulation only permits an offset in respect of "an amount which is legally fixed and undisputed". As noted in the examples cited, *supra*, Customs is offsetting refunds of IEEPA tariffs in its CAPE system in respect of claims which are current, live and under active dispute, and which are hardly fixed and undisputed.

15

In the instant case, there would be no basis for CBP to offset any IEEPA refunds owed to Performance Additives Inc. in respect of the agency's outstanding demand for repayment of accelerated drawback monies, since that claim is actively disputed, not final and the subject of pending litigation in this Court, to wit, *Performance Additives LLC v. United States*, Court No. 22-00086.

Jurisprudential considerations also militate against permitting CBP to apply offsets in the instant case. To date, all claims processed through the CAPE system have been voluntary, as this Court has noted. Claims processed under CAPE Phase III will involve the execution of this Court's judicial order, which will at least become "law of the case" until final judgment is rendered. As noted above, the treatment of offsets in voluntary CAPE filings has created numerous controversies, many of which are likely to land on this Court's doorstep before or after administrative protests have been denied. The wording of judicial orders to process CAPE refunds should show care and precision, to minimize the risk that litigants will need to seek further relief from this court to cure unlawful offsets. [13]

It is well-established that "unless all parties in interest are in court and have voluntarily litigated some issue not within pleadings, court can consider only issues made by the pleadings and judgment may not extend beyond such issues nor beyond scope of relief demanded." *Armstrong Cork Co. v. Lyons*, 366 F.2d 206, 208 (8th Cir. 1966). While USCIT Rule 54(c) allows a federal court to "grant the relief to which a party in interest is entitled, even if the party has not demanded such relief in his pleadings," this provision does not permit a court to adjudicate entirely new issues. *Beacon Moving & Storage, Inc. v. Loc. 814, Int'l Bhd. of Teamsters, Chauffeurs,*

---

[13] The Court may want to consider whether CBP should be required to seek judicial approval before applying an offset to the refund of an IEEPA tariff. The safest course is to ban the application of offsets altogether, in furtherance of the Court's prior admonition that all persons assessed with these unconstitutional tariffs should receive refunds.

*Warehousemen & Helpers*, 362 F. Supp. 442, 445 (S.D.N.Y. 1972). This Court, after finding IEEPA duties unlawful, has directed Customs and Border Protection to liquidate or reliquidate entries without regard to the IEEPA duties — a remedy directly tied to what the importer was seeking. *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 679285 (Ct. Int'l Trade Mar. 5, 2026).

The offsets which CBP is applying in the CAPE system are claims which could not be asserted in this action as a counterclaim. *See* 28 U.S.C. § 1583. As CBP has indicated it will not process CAPE Phase III entries without receiving an order from this Court, the actions taken from this point forward will have judicial force. If offsets are taken pursuant to Court order, this Court's order may impact disputes between importers and third parties (such as State taxing agencies), and disputes between importers and Customs in respect of entries which are not embraced by this action, and which may, in many cases, become the subject of future actions in this Court. We ask that Customs be ordered to process plaintiff's CAPE refunds without regard to offsets, and suggest that this rule be adopted more generally.

"The Government opposes the request. The issues identified in the motion are either ones that have already been decided by the Court, or are within the exclusive purview of Customs and Border Protection or the Department of the Treasury to resolve, and therefore do not constitute good cause to lift the stay. Raising them now would also cause significant disruption to the existing refund timeline."

Plaintiff disagrees, and urges this Court to consider the significant issues posed by offsets at the earliest possible time. It is likely this issue will recur in many more cases. All parties could benefit by addressing this issue before CAPE Phase III becomes active.

17

## IV.    CONCLUSION

For the reasons set out herein, Plaintiff respectfully moves that this Court amend the Order issued in this case on July 17, 2026 [ECF 10] to provide that Customs shall process Plaintiff's CAPE applications without regard to offsets.

Respectfully Submitted,

/s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
Sanzida Talukder
NEVILLE PETERSON LLP
*Counsel to Plaintiff*
One Exchange Plaza at 55 Broadway
New York, New York 10006

July 28, 2026

18